**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARITZA MONTANEZ, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:15-CV-00397-VAB |
| vs. | : | |
| D&D AUTO, LLC d/b/a FAIRFIELD HYUNDAI, SAFE-GUARD PRODUCTS INTERNATIONAL, LLC, | : | |
| Defendants. | : | JANUARY 29, 2016 |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT SAFE-GUARD'S**
**MOTION FOR SUMMARY JUDGMENT**

The defendant, Safe-Guard Products International, LLC ("Safe-Guard"), respectfully submits this memorandum of law in support of its motion for summary judgment in favor of Safe-Guard on all of the claims asserted against it in the complaint ("Complaint") filed by the plaintiff, Maritza Montanez "Montanez"). The Court should grant summary judgment in favor of Safe-Guard because there are no disputed issues of material fact, the plain and unambiguous language of the parties' contract establishes that engine light / knock sensor problems are not covered under the powertrain coverage plan purchased by Montanez, and the parties' contract satisfies all applicable statutory requirements.

## I. SUMMARY OF UNDISPUTED FACTS

The claims against Safe-Guard concern its obligations under a vehicle service contract[1] that it issued to Montanez. In May 2014, Montanez purchased a used 2012 Mini Cooper (the

[1] The Safe-Guard contract at issue in this case is entitled "PowerProtect Vehicle Service Contract." As explained below, the various statutes and regulations refer to this type of contract as either a "service contract" or an "extended warranty" even though they are referring to the same type of contract. Under the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.*, this type of

"Vehicle") from the co-defendant, D&D Auto, LLC d/b/a Fairfield Hyundai ("Fairfield Hyundai"), pursuant to a retail installment contract. (Facts ¶ 1.) Montanez also purchased a vehicle service contract issued by Safe-Guard ("Safe-Guard Contract CT254623"). (Facts ¶ 2.) The form of contract issued by Safe-Guard is regulated by State of Connecticut's Department of Insurance as a type of insurance contract. (Facts ¶ 3.)

Safe-Guard Contract CT254623 is a separate contract from the retail installment contract under which Montanez purchased the Vehicle. Montanez was charged an additional $2,500 for the coverage provided by Safe-Guard Contract CT254623, above and beyond what she paid for the Vehicle. (Facts ¶¶ 4–5.) Montanez signed the first page of Safe-Guard Contract CT254623 as the "Owner" of the Vehicle on or about May 22, 2014. (Facts ¶¶ 7–8.) The Safe-Guard form contract allows buyers to purchase one of three coverage plans at the time of purchase: Powertrain, Gold, or Platinum. Safe-Guard Contract CT254623, signed by Montanez, selected the Powertrain Coverage plan (the most basic type of coverage offered under the contract), with a $100 deductible and a term of 4 years or 60,000 miles. (Facts ¶ 6.)

Montanez's attorney, Joanne S. Faulkner, sent a letter dated February 27, 2015 to "Fairfield Hyundai" with a copy to Safe-Guard. (Facts ¶ 9.) In her letter, Attorney Faulkner demanded payment for repairs purportedly necessary for an "engine light / knock sensor problem . . ." (the "reported problem"). (Facts ¶¶ 10–11.) This was the first and only correspondence that Safe-Guard received concerning a claim or possible claim under Safe-Guard Contract CT254623 before Montanez initiated this civil action. (Facts ¶¶ 12, 16.)

---

contract is not a "warranty," but instead is referred to as a "service contract." The Connecticut Extended Warranties Act, Conn. Gen. Stat. § 42-260, however, refers to this type of contract as an "Extended Warranty." At times in this Memorandum, Safe-Guard refers to the contract as a "vehicle service contract" because "service contract" is the correct terminology under the Magnuson-Moss Act, which is the act that Montanez pleads in her Complaint.

Safe-Guard responded to Attorney Faulkner's letter by letter dated March 17, 2015. In the letter Safe-Guard explained, among other things, that Safe-Guard Contract CT254623 did not provide coverage for the reported problem under the Powertrain Coverage plan that Montanez had purchased. (Facts ¶¶ 13-14.) Safe-Guard explained:

> [Montanez] selected the Powertrain level of coverage, which does not provide coverage for knock sensors, wiring or radio repairs. Accordingly, the repairs indicated in your complaint letter are not covered under [Safe-Guard Contract CT254623].

(Affidavit of Kenyetta Massiah ("Massiah Aff."), attached hereto as Exhibit A, Ex. 4.) Section III(13) of Safe-Guard Contract CT254623 clearly states that:

> THIS SERVICE CONTRACT WILL NOT PAY OR REIMBURSE YOU FOR . . . (13) UNDER POWERTRAIN AND GOLD COVERAGES, ANY PART THAT IS NOT SPECIFICALLY LISTED AS COVERED UNDER THE COVERAGE SELECTED.

(Massiah Aff. Ex. 1 at SG0004.) Section II (A) of Safe-Guard Contract CT254623 provides an exhaustive list of the Covered Parts under the Powertrain Coverage plan. The specifically listed parts fall into three basic categories: "**ENGINE**," "**TRANSMISSION / TRANSAXLE / TRANSFER CASE**," and "**DRIVE AXLE**." Notably, "electrical" is ***not*** a category included in the Powertrain Coverage plan and neither "knock sensor" nor "engine light" are specifically listed as Covered Parts. (Massiah Aff. Ex. 1 at SG0005.)

Accordingly, Safe-Guard explained that, even if Montanez were to submit a claim, Safe-Guard Contract CT254623 did not provide coverage for the reported problem. (Facts ¶ 15.) Montanez then instituted this civil action the very next day on March 18, 2015, before sending any response refuting or contesting any of the factual assertions set forth in Safe-Guard's March 17, 2015 letter. (Facts ¶ 16.) Montanez did not refute that she purchased Powertrain Coverage

plan or that the Powertrain Coverage plan that she purchased did not cover the problem about which she complained.

## II. ARGUMENT

### A. Legal Standard For Summary Judgment.

Safe-Guard is entitled to summary judgment because there are no disputed issues of material fact and Montanez's claims fail based on the plain language of Safe-Guard Contract CT254623 and the statutes on which she relies. Although the Complaint does not clearly set forth the claims asserted against Safe-Guard, Montanez apparently asserts two claims against Safe-Guard, the issuer of Safe-Guard Contract CT254623: (i) breach of contract; and (ii) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), 15 U.S.C. §§ 2301, *et seq*. The gist of these claims is that Safe-Guard committed a breach of contract and violated the Magnuson-Moss Act by denying coverage for the reported problem as required by the terms of Safe-Guard Contract CT254623. The Complaint also appears to contend that Safe-Guard Contract CT254623 fails to satisfy the Magnusson-Moss Act's clarity of language and proper disclosure requirements. Whatever theory or claims Montanez may be pursuing, the Court nonetheless should grant summary judgment in favor of Safe-Guard because the undisputed material facts establish that the reported problem does not fall within the scope of coverage of Safe-Guard Contract CT254623 and that Safe-Guard Contract CT254623 is not subject to the Magnuson-Moss Act. Even if this Court were to conclude that Safe-Guard Contract CT254623 is subject to the Magnuson-Moss Act, it satisfies all of the requirements of that Act; therefore, an order entering summary judgment in favor of Safe-Guard is warranted.

Courts must "grant summary judgment, if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries the burden of demonstrating that there is no genuine

material dispute of fact by citing to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citation omitted). A dispute regarding a material fact is "'genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and material if the substantive law governing the case identifies those facts as material. *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)); *see also Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In assessing a summary judgment motion, the Court must resolve all ambiguities, including credibility questions, and draw all inferences from the record as a whole in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *Hua Lin v. W&D Assocs., LLC*, 2015 U.S. Dist. LEXIS 157484, 10–11 (D. Conn. Nov. 20, 2015).

### B. The Court Should Grant Summary Judgment On Montanez's Claim that Safe-Guard Breached Safe-Guard Contract CT254623 Because The Plain and Unambiguous Terms Of the Contract Do Not Cover Montanez's Claim.

Safe-Guard is entitled to summary judgment on Montanez's claim—whether sounding in breach of contract or as a violation of the Magnuson-Moss Act—that Safe-Guard breached the terms of Safe-Guard Contract CT254623 by refusing to pay her claim because the plain and unambiguous language of Safe-Guard Contract CT254623 establishes that it does not cover the reported problem for which Montanez sought coverage.

Connecticut substantive law governs both Montanez's common law contract claim and her Magnuson-Moss Act claim. *See Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238,

247-48 (2d Cir. 1986) (holding that state law governs warranty claims brought under the Magnuson-Moss Act except when explicitly modified by the Act's minimum standards).

Montanez bears the burden of showing that her claim falls within the scope of coverage provided by Safe-Guard Contract CT254623. *Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc.*, 10 F. Supp. 3d 252, 259 (D. Conn. 2014) ("The insured bears the burden of establishing coverage"); *Stelco Indus. v. Cohen*, 182 Conn. 561, 563-64 (1980) (warranty claim); *Frempong v. New England Truck Sales & Serv.*, 2008 Conn. Super. LEXIS 3259, *10 (Conn. Super. Ct. Dec. 30, 2008) ("The court finds that the plaintiff has the burden of proving [the defendant's] breach of its warranty."). Where, as here, a plaintiff's claims does not fall within the scope of a contract, summary judgment is appropriate. *See Conn. Ins. Guar. Ass'n*, 314 Conn. at 195 (upholding summary judgment of no coverage because the contract "plainly and unambiguously does not cover" the underlying wrongful act); *Ramirez v. Health Net of the Northeast, Inc.*, 285 Conn. 1, 16 (Conn. 2008).

The Court should interpret and apply the terms of Contract CT254623 in the same manner as it would any other contract. As the Connecticut Supreme Court has explained, courts must:

> accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract . . . . Where the language is unambiguous, we must give the contract effect according to its terms . . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter.

*Cantonbury Heights Condominium Assn., Inc. v. Local Land Development, LLC*, 273 Conn. 724, 735 (2005) (citations omitted); *see United Illuminating Co. v. Wisvest-Connecticut, L.L.C.*, 259 Conn. 665, 670 (2002) ("the words of the contract 'must be given their natural and ordinary meaning.'") (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 35 (1992)); *see also Conn. Ins. Guar.*

*Ass'n v. Drown*, 314 Conn. 161, 187–88 (Conn. 2014) (" The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy."). In construing contracts, the court must give effect to all of the language included therein, as "the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." *Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 546 (2006) (internal quotation marks omitted); *O'Brien v. United States Fidelity & Guaranty Co.*, 235 Conn. 837, 843 (1996) ("when interpreting a contract, [courts] must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result").

Safe-Guard Contract CT254623 clearly does not provide coverage for Montanez's claim. Montanez's attorney, Attorney Faulkner, demanded payment for repairs purportedly necessary for an "engine light / knock sensor problem . . . ." (Facts ¶¶ 10–11.) Montanez reiterates in the Complaint her claim that Safe-Guard breached Safe-Guard Contract CT254623 because it failed to pay for the cost of the electrical system repair related to a faulty knock sensor. (Compl. ¶ 20, 22.) Montanez, however, did not purchase coverage for breakdowns related to the Vehicle's electrical system. At the time of purchase, Montanez selected the Powertrain Coverage plan (the most basic coverage plan offered under the contract), with a $100 deductible and a term of 4 years or 60,000 miles. (Facts ¶ 6.)

Section II of Safe-Guard Contract CT254623—entitled "WHAT THIS SERVICE CONTRACT COVERS"—explains that "[t]here are three coverage plans (Powertrain, Gold and Platinum) described in this Service Contract. The coverage plan that applies to the Covered Vehicle is determined by the Plan **YOU** purchased which is identified by the checked box on

Page One of the Service Contract." (Massiah Aff. Ex. 1 at SG0005.) On Page One of Safe-Guard Contract CT254623, the page signed by Montanez (Massiah Aff. Ex. 1), the box for "Powertrain" is checked. The Powertrain Coverage plan is the lowest level of coverage available under the Safe-Guard form contract.

Section II (A) provides an exhaustive list of the Covered Parts under the Powertrain Coverage plan. The specifically listed parts fall into three basic categories: "**ENGINE**," "**TRANSMISSION/ TRANSAXLE/ TRANSFER CASE**," and **"DRIVE AXLE**." Notably, "electrical" is ***not*** a category included in the Powertrain Coverage plan and neither "knock sensor" nor "engine light" are specifically listed as Covered Parts. (Massiah Aff. Ex. 1 at SG0005.) Additionally, "radio" is not listed as a Covered Part under the Powertrain Coverage Plan. (Massiah Aff. Ex. 1 at SG0005.) The Powertrain Coverage plan does not list any part that was the subject of Montanez's claim. Accordingly, Safe-Guard Contract CT254623 does not cover Montanez's claim.

The fact that the Powertrain Coverage plan purchased by Montanez does not cover the reported problem is all the more evident by examining what is covered under the coverage plans *not* purchased by Montanez. The Gold Coverage plan, includes the Powertrain Coverage plan plus several additional categories of parts. Significantly, the Gold Coverage plan includes an "**ELECTRICAL"** category and specifically lists "***knock sensor***" as a Covered Part.[2] (Massiah Aff. Ex. 1 at SG0005 (emphasis added).) The Platinum Coverage plan includes the Gold Coverage plan plus some additional categories of parts.

[2]The Gold Coverage plan also lists "radio" and "compact disc players" as covered parts. (Massiah Aff. Ex. 1 at SG0006.) The Powertrain Coverage plan does not. (*Id.*)

Moreover, the conclusion that the Powertrain Coverage plan does not include the repairs that form the basis of Montanez's claim is further evident after reviewing Safe-Guard Contract CT254623 in its entirety. Section III(13) of Safe-Guard Contract CT254623 clearly states that:

> THIS SERVICE CONTRACT WILL NOT PAY OR REIMBURSE YOU FOR . . . (13) UNDER POWERTRAIN AND GOLD COVERAGES, ANY PART THAT IS NOT SPECIFICALLY LISTED AS COVERED UNDER THE COVERAGE SELECTED.

(Massiah Aff. Ex. 1 at SG0007.) To that end, Safe-Guard informed Montanez's attorney that Safe-Guard Contract CT254623 did not provide coverage for the reported problem:

> [Montanez] selected the Powertrain level of coverage, which does not provide coverage for knock sensors, wiring or radio repairs. Accordingly, the repairs indicated in your complaint letter are not covered under the [Safe-Guard Contract CT254623].

(Massiah Aff. Ex. 4.) Montanez did not respond to Safe-Guard's letter before filing this lawsuit.

Safe-Guard Contract CT254623, purchased by Montanez, clearly and unambiguously does not provide coverage for the problem about which Montanez's attorney complained in February, 2015. Accordingly, the Court should enter summary judgment in Safe-Guard's favor on all claims premised on the contention that Safe-Guard improperly denied Montanez's claim for coverage, whether sounding in contract or violations of any statute.

### C. **The Court Should Grant Summary Judgment On Montanez's Remaining Claims Because The Magnuson-Moss Act Does Not Apply.**

In the Complaint, Montanez alleges that Safe-Guard violated the Magnuson-Moss Act because Safe-Guard Contract CT254623 did not "fully, clearly, and conspicuously disclose [the] terms and conditions and simple and readily understood language." (Compl. ¶¶ 11, 20, 22, 36.) The Magnuson-Moss Act, however, does not apply to Safe-Guard Contract CT254623 because it is a vehicle service agreement regulated as a contract of insurance by the State of Connecticut.

In any event, the Safe-Guard contract satisfies the requirements of both the Magnuson-Moss Act and applicable Connecticut statutes.

**1. The Magnuson-Moss Act Does Not Apply To Safe-Guard Contract CT254623.**

The Magnuson-Moss Act does not apply to Safe-Guard Contract CT254623 because Safe-Guard Contract CT254623 is a vehicle service contract regulated by Conn. Gen. Stat. § 42-260 and regulations promulgated thereto by the State of Connecticut Department of Insurance. The Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.*, creates minimum disclosure requirements for certain consumer product warranties. *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1040 (N.D. Ga. 2004). "The Act was intended to supplement, not supplant, state law. Therefore, unless the Act expressly prescribes a regulating rule, courts should apply state law to written and implied warranty claims made under the Act." *Id.* (citing *Walsh v. Ford Motor Co.*, 257 U.S. App. D.C. 85, 807 F.2d 1000, 1012 (D.C. Cir. 1986)).

Under the Magnuson-Moss Act, Safe-Guard Contract CT254623 is not a warranty, but instead a vehicle service contract. The Act defines a "service contract" as "a contract in writing to perform, over a fixed period of time or for the specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8). In contrast, the Act defines a written warranty as a written "affirmation" or "undertaking" either "made in connection with the sale of a consumer product by a ***supplier***" or "in connection with the sale by a ***supplier*** . . . ." 15 U.S.C. § 2301(6)(A) & (B) (emphasis added). Unlike a warranty that is part and parcel with the purchase of the consumer product, Montanez purchased the Safe-Guard coverage pursuant to Safe-Guard Contract CT254623, a contract separate and apart from the vehicle installment contract by which she purcahsed the Vehicle. Montanez could have purchased the Vehicle without purchasing the Safe-Guard coverage. Moreover, by its express

terms, Safe-Guard Contract CT254623 only applies to repairs not otherwise covered by the manufacturer's warranty. (Massiah Aff. Ex. 1 at SG0007.) Most importantly, Safe-Guard was not the ***supplier*** of the Vehicle. Accordingly, as far as a Magnuson-Moss Act analysis is concerned, Safe-Guard Contract CT254623 is a vehicle service contract.

The Magnuson-Moss Act only applies to a vehicle service contract if the contract in question is not regulated by the applicable state as the business of insurance. The provisions of the McCarran-Ferguson Act, 15 U.S.C. 1011 *et seq.*, preclude the application of any federal laws like the Magnuson-Moss Act which invalidate, impair, or supersede governing state statutes concerning the business of insurance. *See, e.g., American Deposit Corp. v. Schacht*, 84 F.3d 834, 837-38 (7th Cir. 1996). Consequently, the Magnuson-Moss Act does not regulate vehicle service contracts if they are considered to fall within the ambit of the business of insurance. *See* 16 C.F.R. § 700.11(a) (Magnuson-Moss Act does not govern vehicle service contracts); *Nibert v. Al Peimonte Ford Sales, Inc.*, 689 N.E.2d 1196, 1201 (Ill. App. Ct. 1998) (vehicle service contracts are not governed by the Magnuson-Moss Act). The Magnuson-Moss Act only applies to a vehicle service contract if the contract in question is ***not*** regulated by the applicable state as a contract of insurance. *See* the McCarran-Ferguson Act, 15 U.S.C. 1011 *et seq.*; *see, e.g., American Deposit Corp. v. Schacht*, 84 F.3d 834, 837–38 (7th Cir. 1996). As explained by the United States District Court for the Northern District of Illinois:

> A regulation issued by the Federal Trade Commission, which is charged with making regulations in connection with the [Magnuson-Moss Act], directly addresses whether the [vehicle service contracts] are covered by the [Magnuson-Moss Act]. Specifically, the relevant regulation states: The Act recognizes two types of agreements which may provide similar coverage of consumer products, the written warranty, and the service contract. In addition, other agreements may meet the statutory definitions of either 'written warranty' or 'service contract,' but are sold and regulated under state law as contracts of insurance. One example is

> the automobile breakdown insurance policies sold in many jurisdictions and regulated by the state as a form of casualty insurance. The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, precludes jurisdiction under federal law over 'the business of insurance' to the extent an agreement is regulated by state law as insurance. Thus, such agreements are subject to the [Magnuson-Moss Act] only to the extent they are ***not*** regulated in a particular state as the business of insurance.

*Kennedy v. Butler Fin. Solutions, LLC*, 2009 U.S. Dist. LEXIS 8303, *11–12 (N.D. Ill. Feb. 4, 2009) (citing 16 C.F.R. § 700.11 (emphasis added)).

In Connecticut, vehicle service contracts, like Safe-Guard Contract CT254623, are governed by Conn. Gen. Stat. § 42-260, *et seq*. Section 42-260 refers to such contracts as "extended warranties" which encompass any "contract or agreement to either perform or provide indemnification for the repair, replacement or maintenance of a product because of operational or structural failure of such product due to a defect in materials, skill or workmanship or normal wear and tear given for consideration over and above the lease or purchase price of a product." Conn. Gen. Stat. § 42-260(a)(1). As explained by a bulletin issued by the Connecticut Insurance Commissioner, Section 42-260 applies to contracts like Safe-Guard Contract CT254623 and imposes certain minimum insurance and disclosure requirements. CT Property/Casualty Bulletin No. PC-45-03 (October 30, 2003) ("While prior to the enactment of Public Act 03-50 the law relating to extended warranties provided an exception for contracts applicable to repair services of automobiles, such exception has been eliminated as of July 1, 2003, consequently, contract for the repair, replacement or maintenance of automobiles are considered to be 'Extended Warranty' contracts subject to the requirements of Conn. Gen. Stat. §42-260"). The Department of Insurance has promulgated regulations under Section 42-260 establishing standards for such contracts. *See* Conn. Reg. § 42-260-1, *et seq.*

Indeed, the Department of Insurance has examined and approved the Safe-Guard contract at issue here. The Safe-Guard contract issued to Montanez, Safe-Guard Contract CT254623, is written on a form vehicle service contract, Form Number PPVSC, edition date 1/13. Safe-Guard submitted Form Number PPVSC, edition date 1/13 to the Connecticut Insurance Department for approval. On September 17, 2012, the Connecticut Insurance Department approved the form contract and issued a disposition notice of "Recorded Effective as Amended" for Form Number PPVSC (and others). Accordingly, the Magnuson-Moss Act does not apply to Safe-Guard Contract CT254623 and the Court should grant summary judgment in favor of Safe-Guard on any claims asserted under that Act.

### 2. In Any Event, Safe-Guard Contract CT254623 Satisfies the Requirements of the Magnuson-Moss Act and Conn. Gen. Stat. § 42-260.

Moreover, regardless of whether the Magnuson-Moss Act applies or Conn. Gen. Stat. § 42-260 applies, Safe-Guard Contract CT254623 satisfies the requirements of either act. Under the Magnuson-Moss Act, a written warranty must disclose nine items: (1) the identities of the parties to whom the warranty is extended; (2) a clear description and identification of any parts of the product excluded from the warranty; (3) a statement of what the warrantor will and will not do in case of defect, malfunction or other nonconformity of the product to the warranty; (4) the temporal boundaries of the warranty; (5) a step-by-step description of the procedure for consumers to obtain performance under the warranty; (6) information respecting the availability of any dispute settlement mechanism elected by the warrantor; (7) a statement identifying any limitation on the duration of the implied warranties; (8) a statement of exclusions or limitations on relief (such as incidental or consequential damages); and (9) a statement advising the buyer that the warranty confers specific legal rights, and that other rights may be conferred pursuant to

state law. 16 C.F.R. 701.3(a)(1)–(9). Although 15 U.S.C. § 2306 authorizes the Federal Trade Commission to issue regulations prescribing minimum requirements for service contracts, the Commission has not issued such regulations. Accordingly, Section 2306 merely requires that the terms of a service contract be fully, clearly, and conspicuously disclosed. 12 U.S.C. § 2306(a).

Under Conn. Gen. Stat. § 42-260, the contract must include: (1) a clear description and identification of the product; (2) the term of the extended warranty; (3) a description of the limits on transfer or assignment of the extended warranty; (4) A statement of the obligation of the Extended Warranty Provider, including statements of: (a) Any services, parts, components, defects, malfunctions, conditions, repairs or remedies that are excluded from the scope of the extended warranty; (b) any limits on the obligations of the Extended Warranty Provider; (c) any additional services which the Extended Warranty Provider will supply; (d) Whether the buyer has the responsibility of any other obligations and, if so, the nature and frequency of such obligations, and the consequences of any noncompliance; (e) A step-by-step explanation of the procedure which the buyer is to follow in order to obtain performance of any obligation under the extended warranty; (5) a description of the services the Extended Warranty Provider will supply under the extended warranty; (6) a statement of the buyer's right to cancel the warranty; and (7) the name and address of the insurers insuring the obligations and liabilities of the warranty and instructions on how the buyer of the product, or the successor to the buyer's rights, may file a claim with the insurer if the Extended Warranty Provider fails to perform according to the terms of the extended warranty. Conn. Gen. Stat. § 42-260(c).

The Court need only compare the terms of Safe-Guard Contract CT254623 against these requirements to see that it satisfies all of these requirements. The contract fully, clearly, and conspicuously sets forth its terms as required generally under the Magnuson-Moss Act and it

satisfies the specific requirements of the Connecticut statute. Indeed, the State of Connecticut Department of Insurance accepted the underlying Safe-Guard form contract on September 17, 2012.[3] Accordingly, Safe-Guard is entitled to summary judgment on all claims asserting that Safe-Guard Contract CT254623 fails to satisfy the requirements of the Magnuson-Moss Act or Conn. Gen. Stat. § 42-260.

## III. CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment in favor of Safe-Guard on all claims asserted against it in the Complaint filed by Montanez.

Respectfully submitted,

*/s/ Joseph K. Scully*

Joseph K. Scully (ct26541)
*jkscully@daypitney.com*
Andraya B. Pulaski (ct29715)
*apulaski@daypitney.com*
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103-1212
Telephone: (860) 275-0100
Facsimile: (860) 275-0343

ATTORNEYS FOR SAFE-GUARD PRODUCTS INTERNATIONAL, LLC

[3] A copy of the Department of Insurance's filings and disposition related to the relevant Safe-Guard form is attached to this Memorandum at Tab 1. The Court may take judicial notice of the Department's approval of the Safe-Guard contract. *See Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F. Supp. 2d 192, 197 (D. Conn. 2006). "Among the matters of which courts may take judicial notice are decisions of an administrative agency." *Reynolds v. Blumenthal*, 3:04cv218 (PCD), 2006 U.S. Dist. LEXIS 68970, 2006 WL 2788380, at *3 n.7 (D. Conn. Sept. 26, 2006) (citing *Furnari v. Warden*, 218 F.3d 250, 255 (3d Cir. 2000) ("[I]t is proper for this Court to take judicial notice of decisions of an administrative agency."); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice.").

## CERTIFICATE OF SERVICE

I hereby certify that on the 29h day of January 2016, the foregoing **Defendant's Memorandum of Law In Support of Defendant's Motion for Summary Judgment** was filed electronically and served by mail on anyone unable to accept electronic filing. I further certify that a hard copy, including exhibits, will be mailed to Judge Victor A. Bolden. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Joseph K. Scully*
Joseph K. Scully