UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MARITZA MONTANEZ,
　　　　　Plaintiff,

　　　　v.　　　　　　　　　　　　　　CASE NO. 3:15-cv-397 (VAB)

D&D AUTO, LLC *doing
business as* FAIRFIELD
HYUNDAI and SAFE-GUARD
PRODUCTS INTERNATIONAL,
LLC,
　　　　　Defendants.

## RULING ON MOTIONS TO DISMISS, MOTION FOR JUDGEMENT ON THE PLEADINGS, MOTION TO AMEND THE COMPLAINT, AND MOTION FOR SANCTIONS

Maritza Montanez initiated this action in March 2015 against D&D Auto, LLC doing business as Fairfield Hyundai ("Fairfield Hyundai"), a car dealership, and Safe-Guard Products International, LLC ("Safe-Guard"). Compl., ECF No. 1. Ms. Montanez's claims arise out of her purchase of a used Mini Cooper from Fairfield Hyundai and a service contract on that vehicle from Safe-Guard. *Id.* ¶¶6-7, 10.

Ms. Montanez claims that the Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.*, and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §2301 *et seq. Id.* ¶1. She also asserts claims of fraud, breach of contract, breach of warranty, breach of the covenant of good faith and fair dealing, and common law misrepresentation. *Id.* She seeks compensatory, statutory, and punitive damages as well as costs and attorney's fees. *Id.* at Prayer for Relief.

1

Although Ms. Montanez's Complaint asserts all of her claims generally against both Defendants, in its Motion to Dismiss, Safe-Guard contends that Ms. Montanez targets Safe-Guard only with respect to her breach of contract and MMWA claims. Safe-Guard's Br. 1, ECF No. 14. Ms. Montanez does not object to this characterization of her claims, thus, the Court will consider only these two claims against Safe-Guard. The parties appear to agree that Ms. Montanez has asserted all claims listed in the Complaint against Fairfield Hyundai.

The parties have filed a number of motions. Each Defendant has filed a motion to dismiss, ECF Nos. 13, 17, and Ms. Montanez has filed a Motion for Judgment on the Pleadings against Safe-Guard, ECF No. 15. After these three motions were fully briefed, Ms. Montanez moved to amend her Complaint, ECF No. 33, which Safe-Guard opposes. Safe-Guard has also filed a Motion for Sanctions, ECF No. 38, claiming that Ms. Montanez's counsel has no good basis for an assertion made in her initial Complaint and another assertion she seeks to add in her Proposed Amended Complaint.

The Court first will address the motions to dismiss and the Motion for Judgment on the Pleadings. It will then address the Motion to Amend and Motion for Sanctions. For the reasons that follow, Safe-Guard's Motion to Dismiss, ECF No. 13, is **GRANTED IN PART** and **DENIED IN PART**; Ms. Montanez's Motion for Judgment on the Pleadings, ECF No. 15, is **DENIED**; Fairfield Hyundai's Motion to Dismiss, ECF No. 17, is **GRANTED IN PART** and **DENIED IN PART**; Safe-Guard's Motion for Sanctions, ECF No. 38, is **DENIED;** and Ms. Montanez's Motion to Amend the Complaint, ECF No. 33, is **GRANTED IN PART** and **DENIED IN PART**.

## I.      Factual Allegations

Ms. Montanez alleges that she bought a used Mini Cooper from Fairfield Hyundai on May 19, 2014 under a Retail Installment Contract.  Compl. ¶6, ECF No. 1.  She also contends that she purchased a service contract issued by Safe-Guard for $2,500, which Fairfield Hyundai represented covered the car's electronic components.  *Id.* ¶¶7, 10.  She claims that Fairfield Hyundai also told her that the Mini Cooper was covered by a factory warranty that expired "at 50,000 miles or August 15, 2015," whichever occurred first.  *Id.* ¶13.

After Ms. Montanez purchased the car, she alleges that the engine light began illuminating "regularly."  *Id.*  ¶8.  She claims that the engine light problem was related to a "TSB for the Mini Cooper related to the knock sensor."  *Id.* ¶¶9, 19.  She alleges that both Defendants refused to pay for or authorize repairs on her Mini Cooper, thereby forcing her to drive an unsafe vehicle. *Id.* ¶¶2, 14, 121-24.  At least one dealer that investigated the problem allegedly determined that it was attributable to the car having an aftermarket radio.  *Id.* ¶17.

Ms. Montanez contends that the factory warranty and the Safe-Guard service contract were in force at the time these incidents occurred.  *Id.* ¶¶10, 13.  She also alleges that the Safe-Guard contract consisted of "fine print" and that Fairfield Hyundai never provided her with the page of the contract describing coverage disclosure.  *Id.* ¶¶11-12.

Ms. Montanez also alleges that Fairfield Hyundai made certain misrepresentations about the car it sold her and the payments she owed.  She claims that Fairfield Hyundai misrepresented that the car was a "one-owner vehicle."  *Id.* ¶15.  She also claims that Fairfield Hyundai sold the car to her "knowing it had an aftermarket radio."  *Id.* ¶16.  She

3

contends that Fairfield Hyundai included $750 GAP insurance and a $189 VIN Etch service without asking her permission, without disclosing the terms of conditions of such inclusions, and without actually etching her car.  *Id.*  ¶¶30-31.

She contends that Fairfield Hyundai failed to provide her with the "Buyer's Guide" or a DMV Form K-208.  *Id.* ¶¶25, 33.  She also alleges that Fairfield Hyundai misrepresented the percentage interest rate and the payments due on her installment contract.  *Id.* ¶¶26-28.[1]  She contends that it disclosed and charged her a higher license and registration fee than was actually owed and that its dealer conveyance fee was "well over the standard price for such a fee."  *Id.* ¶¶29, 32.

## II. Motions to Dismiss (ECF Nos. 13, 17) and Motion for Judgment on the Pleadings (ECF No. 15)

Both Fairfield Hyundai and Safe-Guard have moved to dismiss Ms. Montanez's case in its entirety.  Mots. To Dismiss, ECF Nos. 13, 17.  First, they both argue that the Court should dismiss the case under Federal Rule of Civil Procedure 12(b)(1), because it lacks subject matter jurisdiction.  Second, they both argue that Ms. Montanez has failed to state legally viable claims under Federal Rule of Civil Procedure 12(b)(6).  Ms. Montanez also seeks judgment on the pleadings in her favor under Federal Rule of Civil Procedure 12(c) against Safe-Guard only.  Mot. for J. on Pleadings, ECF No. 15.

The Court will address the arguments about subject matter jurisdiction first.  It then will address the Rule 12(b)(6) arguments and the Motion for Judgment on the Pleadings.

---

[1] Ms. Montanez alleges that the amounts she needed to pay were lower than initially disclosed.

**A. Standard**

"[F]ederal courts are courts of limited jurisdiction," and they must exercise that jurisdiction within the prescriptions of Congress or the Constitution. *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). Rule 12(b)(1) requires a federal court to dismiss any case for which it lacks subject matter jurisdiction without addressing the merits. *See Arbagh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety…"); Fed. R. Civ. P. 12(b)(1). This Court has subject matter jurisdiction over a case if (a) the parties are completely diverse and the amount in controversy requirements are met, or (b) the lawsuit requires the Court to decide a matter of federal law. *See* 28 U.S.C. §§1331-1332. In the latter case, a court may exercise supplemental jurisdiction over related state law claims. *See* 28 U.S.C. §1367(a). Ms. Montanez bears the burden of establishing the existence of subject matter jurisdiction. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

At this stage, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (citations omitted).  Generally, in resolving a Rule 12(b)(6) motion, the Court also must consider only "the facts as asserted within the four corners of the complaint."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).[2]  In determining whether the Court has subject matter jurisdiction, on the other hand, the Court may consider matters outside of the Complaint, if necessary.  *See Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015); *see also United States v. Space Hunters, Inc.*, 429 F.3d 416, 425-27 (2d Cir. 2005) (reversing a district court's grant of a motion to dismiss because it looked outside of the pleadings to resolve the applicability of an affirmative defense that did not relate to subject matter jurisdiction).

In deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standard applicable to motions to dismiss

---

[2] In resolving a motion to dismiss, the Court may also consider documents attached to the complaint or incorporated into the complaint by reference. *McCarthy*, 482 F.3d at 191.  In this case, the Court has identified no documents outside of the Complaint that may be considered at this time.  While Safe-Guard has attached its service contract to its Motion to Dismiss, the Court cannot consider it.  The contract is mentioned in the Complaint and is integral to all of the claims against Safe-Guard, but the Court is not certain that Ms. Montanez had the contract in her possession when she drafted the Complaint.  Indeed, one of the allegations in the Complaint is that Ms. Montanez never received the document in its entirety and the Complaint does not contain a quotation of any of the contracts terms. Compl. ¶12, ECF No. 1; *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[T]he harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered… a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (citing *Cortec Indus., Inc. v. Sum Hldg. L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)); *see e.g.*, *U.S. Bank Nat'l Ass'n v. Bank of America, N.A.*, No. 12 Civ. 4873(CM), 2012 WL 6136017, at *2 (S.D.N.Y. Dec. 11, 2012) (refusing to consider certain exhibits that were "central" to the case, because there was no evidence that the plaintiff "relied at all upon the terms and effects of these exhibits in drafting the Amended Complaint").  Similarly, Fairfield Hyundai has attached a number of documents to its Motion to Dismiss, but there is no evidence that Ms. Montanez had access to them in drafting her Complaint.  That said, the Court does not believe that considering any of these extraneous documents would alter the result in this case.

brought under Rule 12(b)(6).  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citation omitted).

### B.  Subject Matter Jurisdiction

Ms. Montanez claims this Court has subject matter jurisdiction over all of her claims because she raises questions of federal law under TILA and the MMWA.  Compl. ¶3, ECF No. 1 (citing 28 U.S.C. §1331, the federal question statute, and 15 U.S.C. §1640(e), a provision of TILA enabling private causes of action in federal court).  She contends that the Court should exercise supplemental jurisdiction over the other state law claims in her case, because they arise out of the same facts.  *Id.* (citing 28 U.S.C. §1367).

Both Safe-Guard and Fairfield Hyundai argue that the Court lacks subject matter jurisdiction because Ms. Montanez fails to state a claim under federal law.  Fairfield Hyundai argues that the Court lacks subject matter jurisdiction because Ms. Montanez has failed to state claims under TILA or the MMWA.  Fairfield Hyundai's Br. 2-3, 5-11, ECF No. 18.  It argues that because these are the only two federal legal claims in the case, the Court has no jurisdiction to hear the matter.  *Id.*  at 2-4.

Safe-Guard argues that Ms. Montanez has failed to state a claim that satisfies the amount in controversy requirements of the MMWA, which is the only federal claim against it.  Safe-Guard's Br. 3-4, ECF No. 14.  It also reasons that, even if the Court has subject matter jurisdiction over any claim asserted against Fairfield Hyundai, the remaining state law claim against Safe-Guard, for breach of contract, is not sufficiently related to the case against Fairfield Hyundai for the Court to exercise supplemental jurisdiction.  *Id.* at 4-5.

For the reasons that follow, the Court finds that Ms. Montanez has stated a TILA claim and that it is appropriate to exercise supplemental jurisdiction over the state law claims against Fairfield Hyundai and Safe-Guard.  It dismisses the MMWA claims against both Defendants, because it finds that the amount in controversy has not been satisfied and that it cannot exercise supplemental jurisdiction over MMWA claims.

### 1.   TILA Claim against Fairfield Hyundai

Ms. Montanez does not specify in her Complaint what aspect of Fairfield Hyundai's conduct violates TILA.  However, she alleges that she purchased a Mini Cooper from Fairfield Hyundai under a "Retail Installment Contract."  Compl. ¶6, ECF No. 1.  She also claims that in making that sale, Fairfield Hyundai failed to accurately disclose the annual percentage rate, the amount of the monthly payments, the amount of total payments, and some of the fees associated with her purchase of the Mini Cooper. *Id.* ¶¶26-29.  Because TILA requires certain disclosures for credit transactions, these allegations implicate the Act.  *See* 15 U.S.C. §§1601(a), 1637-1638; *see also Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) (TILA's purpose is to "'assure a meaningful disclosure of credit terms'" and observing that the Act "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights") (quoting 15 U.S.C. §1601(a)); *see also e.g.*, *Poulin v. Balise Auto Sales, Inc.*, NO. 3:08-cv-01618 (CSH), 2010 WL 1370862, at *2 (D. Conn. Apr. 5, 2010) (applying TILA to car financing).

Fairfield Hyundai argues that the TILA claim should be dismissed because it complied with the "purpose" of the Act and provided Ms. Montanez with the sales

contract before her purchase.  Fairfield Hyundai's Br. 5-6, 7-8, ECF No. 18.  This argument does not present a basis for dismissing the TILA claim at this time, because it merely disputes facts alleged in the Complaint.  At this stage, the Court must assume that allegations in the Complaint are true and may only dismiss claims for legal insufficiency. *See Newman & Schwartz*, 102 F.3d at 662 (citation omitted).  Moreover, because TILA is a remedial statute, even technical violations can form the basis for liability.  *See Kurz v. Chase Manhattan Bank*, 273 F. Supp. 2d 474, 479 (S.D.N.Y. 2003) (collecting cases).

Fairfield Hyundai also contends that dismissal of Ms. Montanez's TILA claim is appropriate, because she fails to "show" detrimental reliance, Fairfield Hyundai's Br. 8-9, ECF No. 18, citing cases indicating that detrimental reliance is required to recover actual damages under TILA.  *See e.g.*, *Jaldin v. ReconTrust Co., N.A.*, 539 F. App'x 97, 103 (4th Cir. 2013); *see also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 428 (S.D.N.Y. 2003) ("It is well-established that a plaintiff must show detrimental reliance to establish actual damages for a TILA violation.") (collecting cases).  However, under TILA, parties can recover "statutory damages."  *See* 15 U.S.C. §1640(a)(1)-(2).  Thus, a failure to plead reliance does not warrant dismissal of the TILA claim in its entirety.

Ms. Montanez claims that she has pled reliance because she "relied on the promise that a warranty would be applicable both by purchasing it, and by following up with a request to do warranty repairs."  Pl.'s Opp. Br. 3, ECF No. 31.  Ms. Montanez appears to be referring to the "factory warranty" alleged to apply to her car, as there is no allegation that Fairfield Hyundai was a party to the service contract issued by Safe-Guard.  Compl. ¶13, ECF No. 1.  However, the Court does not understand how this

argument supports her TILA claim, because it does not relate to her reliance on terms of the credit arrangement.

Moreover, the Court disagrees that Ms. Montanez has plead that she actually relied on any promises made in the warranty, or indeed any other alleged representations about the pricing and nature of her installment contract.  In her opposition to Fairfield Hyundai's motion, Ms. Montanez does not cite any particular allegations from the Complaint in making this argument, nor can the Court identify any that would support her theory.[3]  Accordingly, the aspect of Ms. Montanez's claim that seeks actual damages under TILA is dismissed without prejudice.  *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d at 431 (granting a motion to dismiss on a TILA claim for actual damages because plaintiff failed to plead actual reliance); *Jaldin*, 539 F. App'x at 103 (affirming the same).  The aspect of her claim seeking statutory damages under TILA may proceed at this time.[4]

## 2.   MMWA Claim against Fairfield Hyundai and Safe-Guard

Both Safe-Guard and Fairfield Hyundai argue that the Court lacks jurisdiction to adjudicate Ms. Montanez's MMWA claim, because she has failed to satisfy the Act's amount in controversy requirements.  Safe-Guard's Br. 3-4, ECF No. 14; Fairfield Hyundai's Br. 2-3, ECF No. 18.  A party invoking this Court's subject matter jurisdiction

---

[3] Ms. Montanez's arguments in her brief that she relied on promises made by Fairfield Hyundai cannot save her Complaint.  Factual allegations that only appear in briefs are not part of the Complaint and cannot defeat a motion to dismiss.  *See e.g.*, *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 175 (S.D.N.Y. 2002) ("A party cannot oppose a motion to dismiss through assertions of facts and references to documents not reflected in the complaint at issue, and the parties' pleadings cannot be amended by these means."); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.").

[4] While Ms. Montanez's claim for statutory damages is not well developed, the Court cannot find, at this time, that there is no possibility that she has such a claim.  *See Frazee v. Seaview Toyota Pontiac, Inc.*, 695 F. Supp. 1406, 1408 (D. Conn. 1988) (noting that "any technical violations" of TILA's disclosure provisions can support an award of statutory damages and that TILA is construed "in favor of the consumer").

has the burden of "proving that it appears to a 'reasonable probability' that the claim is excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).  A plaintiff is typically entitled to a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).  Thus, the "'legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.'"  *Id.*  (quoting *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070-71 (2d Cir. 1996)).  Because the Court finds that Ms. Montanez cannot possibly satisfy the MMWA's jurisdictional amount, it must dismiss the MMWA claim.

The MMWA authorizes a consumer to bring a private civil action in a federal district court against a manufacturer or retailer who fails to comply with the terms of a written or implied warranty.  *See* 15 U.S.C. §2310(d)(1)(B).  The MMWA essentially incorporates state law on breach of warranty; it does not create a separate substantive cause of action but rather sets parameters under which a state law cause of action may be decided in federal court.  *See Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 507 (D. Conn. 2015); *Chiarelli v. Nissan N. Am., Inc.*, 14-CV-4327 (NGG) (VVP), 2015 U.S. Dist. LEXIS 129416, at 26-27 (E.D.N.Y. Sept. 25, 2015).  The Act also requires that, to be heard in federal court, the amount in controversy of any single claim in the case be $25 or more and that the amount for "all claims to be determined" in the case be "$50,000 (exclusive of interests and costs)" or more.  15 U.S.C. §2310(d)(3)(A)-(B); *see also Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 131 (S.D.N.Y. 1982) ("For all

claims aggregated, the amount in controversy, exclusive of interest and costs, must equal or exceed $50,000.").

Ms. Montanez does not allege the dollar amount of damages she seeks in her Complaint. Fairfield Hyundai contends that all of Ms. Montanez's claims may be valued plausibly at a total of $5,945.57. Fairfield Hyundai's Br. 3, ECF No. 18. Safe-Guard contends that her damages may be valued at $1,862.57. Safe-Guard's Br. 3, ECF No. 14; Safe-Guard Reply 2, ECF No. 28. Ms. Montanez argues that Safe-Guard values the claims at $4,367.57 and that this figure excludes improperly $2,000 in statutory damages, as well as an undisclosed amount in fees, that she seeks under TILA. Pl.'s Opp. Br. 4, ECF No. 24. The text of the MMWA prohibits the consideration of fees in determining whether the amount in controversy has been met. 15 U.S.C. §2310(d)(3)(B). The Court will assume, without deciding, that statutory damages may be considered and that Ms. Montanez's view of Safe-Guard's valuation of the claims applies, making Safe-Guard's claimed value of the case $6,362.57.

Ms. Montanez argues that both Safe-Guard and Fairfield Hyundai's proposed figures fail to take into account "the diminished value of the vehicle, or the other warranty problems that could surface when the initial engine light diagnosis is repaired." Pl.'s Opp. Br. 4, ECF No. 31; Pl.'s Opp. Br. 4, ECF No. 24. But she does not provide a dollar amount that represents the plausible value of those claims. She also does not allege in her Complaint that the defect has diminished the value of her car. Nor does she allege any plausible basis to imagine that additional problems will arise when the car is fixed. The Court finds that these arguments are too speculative for them to be considered as part of the amount in controversy. *See Lieb*, 538 F. Supp. at 134 ("indirect harms, if

highly speculative, may not count towards the jurisdiction amount") (citing *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir.), *cert. denied*, 409 U.S. 983 (1972)); *see also Riddles v. Sallie Mae*, No. 08-CV-1499(NG), 2009 WL 3734302, at *3 (E.D.N.Y. Nov. 4, 2009) ("[T]he Court finds that it is not reasonably probable that plaintiff can recover more than [the amount in controversy required] in this action; plaintiff's complaint offers no rationale for the [$]1,150,000 in damages he claims he is owed, or how the amount is in any way related to his allegations against the defendants."); *see also Wood v. Maguire Automotive, LLC*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (conclusory allegations regarding the amount in controversy are not entitled to a presumption of truth).

Ms. Montanez also contends in her opposition brief that Safe-Guard has committed statutory theft, and that, as a result, she is entitled to treble damages on $2,500, the value of the service contract.  Pl.'s Opp. Br. 5, ECF No. 24.  This claim is not in her initial Complaint and, as explained below, the Court denies the aspect of Ms. Montanez's Motion to Amend that seeks to add that claim.  Thus, the Court has no basis to consider this additional amount.

Finally, Ms. Montanez contends that even assuming either Safe-Guard or Fairfield Hyundai's calculations are correct, she meets the amount in controversy requirement because she seeks punitive damages.  Pl.'s Opp. Br. 3-7, ECF No. 31; Pl.'s Opp Br. 3, 5-8, ECF No. 24.  A court may consider punitive damages in determining whether the jurisdictional amount has been met under the MMWA, only if those damages are available under state law.  *Jiminez v. Going Forward, Inc.*, 25 F. Supp. 2d 54, 55 (D. Conn. 1998) (citing *Saval v. B.L. Ltd.*, 710 F.2D 1027, 1033-34 (4th Cir. 1983)); *Angelillo v. Harte Nissan, Inc.*, No. 3:09-cv-1313 (WWE), 2010 WL 569887, at *3 (D.

13

Conn. Feb. 17, 2010) (citing *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir. 1999)).  Punitive damages are available for a breach of warranty under Connecticut law, if a plaintiff claims that the breach occurred "'with a bad motive or with a reckless indifference to the interests of others.'"  *L.F. Pace & Sons, Inc. v. Travelers Indemnity Co.*, 9 Conn. App. 30, 48, *cert. denied*, 201 Conn. 811 (1986) (quoting *Triangle Sheet Metal Works, Inc. v. Silver*, 154 Conn. 116, 128 (1966)); *Angelillo*, 2010 WL 569887, at *3.

Use of punitive damages to satisfy the jurisdictional amount requires close judicial scrutiny, and a district court is "accorded greater discretion" in determining whether the requirements are satisfied.  *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972), *aff'd on other grounds*, 414 U.S. 291 (1973).  For the Court to grant Fairfield Hyundai's motion, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount…" at the time the complaint is filed.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005) (citations omitted).

Assuming without deciding, that Ms. Montanez could recover punitive damages under Connecticut law, she has failed to show that an award of punitive damages will satisfy the required jurisdictional amount.  Under Connecticut law, punitive damages for tort claims, including breach of warranty, are calculated as the "expenses of litigation less taxable costs."  *Silver*, 154 Conn. at 127; *Angelillo*, 2010 WL 569887, at *3 ("Under Connecticut law, punitive damages awarded for a wanton tort are limited to attorney's fees less taxable costs").

As this Court has noted in the past, the Due Process Clause constrains the amount of punitive damages a court may award. *Delisle v. Cruz Auto Sales, LLC*, No. 3:11cv1902(MRK), 2012 WL 2061622, at *2 (D. Conn. June 6, 2012) (citing *Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 416 (2003) ("While States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards… The Due Process Clause… prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.")). While the Supreme Court has not articulated a bright-line rule for when a punitive damages award is unconstitutionally excessive, it has observed that "[punitive damages] award[s] of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Farm Mut. Auto. Ins.*, 538 U.S. at 424-25 (citing *Pacific Mut. Life Ins. v. Haslip* , 499 U.S.1, 23-24 (1991); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996)).

Here, for Ms. Montanez to satisfy the amount in controversy, the Court must award punitive damages seven or eight times the size of the compensatory damages that have been plausibly shown. The amount in controversy cannot be satisfied if it depends on this Court violating due process. *Delisle*, 2012 WL 2061622, at *2-3. Accordingly, the Court finds that Ms. Montanez has failed to satisfy the MMWA's amount in controversy requirements.

Ms. Montanez argues that, even if she fails to meet the jurisdictional amount, the Court may exercise supplemental jurisdiction over her MMWA claim because she has stated a valid TILA claim. Pl.'s Opp. Br. 8, ECF No. 31; Pl.'s Opp. Br. 2-3, ECF No. 24. The Court disagrees. The text of the MMWA provides that "no claim shall be cognizable

in a suit brought" in federal court unless jurisdictional amount is satisfied.  15 U.S.C. §2310(d)(3).

While Ms. Montanez does cite to case law supporting her position, these cases are not binding on this Court and were not decided in this Circuit.  Most district courts in this Circuit have determined that federal courts cannot exercise supplemental jurisdiction over MMWA claims, unless the amount in controversy requirements the Act provides are satisfied.  *See e.g.*, *Jager v. Boston Road Auto Mall, Inc.*, No. 14 Civ. 614(LLS), 2015 WL 235342, at *4 (S.D.N.Y. Jan. 15, 2015) (holding that the amount in controversy requirements of the MMWA foreclosed a court's ability to exercise supplemental jurisdiction over claims brought under the Act that do not meet those requirements); *Lieb*, 538 F. Supp. at 140 (same); *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311(JSR), 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (dismissing an MMWA claim because it failed to meet the jurisdictional amount and supplemental jurisdiction under another federal statute could not apply); *see also Alkhatib v. New York Motor Grp.* LLC, Nos. CV-13-2337(ARR), CV-13-5643(ARR), CV-13-7290(ARR), CV-13-7291(ARR), CV-14-2980(ARR), CV-14-2981(ARR), 2015 WL 3507340, at *24 (E.D.N.Y. June 3, 2015) (observing that most courts in the Second Circuit have reached this conclusion) (R. & R.).  The Court is persuaded that, based on the text of the Act and the reasoning of other district court rulings in this Circuit, the MMWA does not allow cases to be brought in federal court unless the amount in controversy is satisfied.  Accordingly, the Court has no jurisdiction over the MMWA claims, and they are dismissed.

### 3.  Supplemental Jurisdiction

Because the Court has found that Ms. Montanez has stated a valid TILA claim and that all of the other state law claims she alleges are sufficiently related to the TILA claim, the Court exercises supplemental jurisdiction over those claims.  28 U.S.C. §1367(a).  Safe-Guard argues that the Court should not exercise supplemental jurisdiction over the only remaining state law claim against it, because this claim does not arise out of the same facts as the TILA claim.  Safe-Guard's Br. 4-5, ECF No. 14.  The Court disagrees.

If the Court has federal question jurisdiction over any claim in a case, it may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. §1367(a).  Claims arise under the same case or controversy where they "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding."  *People ex rel. Abrams v. Terry*, 45 F.3d 17, 23 n.7 (2d Cir. 1995) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

All of the claims at issue in this case arose out of the same transaction, and the claims against Safe-Guard specifically implicate some representations made by Fairfield Hyundai.  Accordingly, the Court finds that it is appropriate to exercise supplemental jurisdiction over the claims against Safe-Guard, and that it cannot dismiss them for lack of subject matter jurisdiction.

17

### C.  Remaining Claims against Fairfield Hyundai

Fairfield Hyundai argues that all of Ms. Montanez's claims should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Fairfield Hyundai asks the Court to order Ms. Montanez to file a "more definitive statement of her claims" including breaking the claims into separate counts.  Fairfield Hyundai's Br. 21-24, ECF No. 18.  The Court will examine the viability of each of Ms. Montanez's remaining claims against Fairfield Hyundai in turn.  The amendments proposed in the currently pending Motion to Amend the Complaint, ECF No. 33, do not change the analysis.

### 1.  Fraud against Fairfield Hyundai

Fairfield Hyundai argues that Ms. Montanez's fraud claim is not pled with sufficient particularity under Federal Rule of Civil Procedure 9(b).  Fairfield Hyundai's Br. 11-13, ECF No. 18.  Rule 9(b) provides special pleading rules for allegations of fraud or mistake.  Fed. R. Civ. P. 9(b).  For the reasons that follow, the Court agrees and grants Fairfield Hyundai's Motion to Dismiss the fraud claim without prejudice.

Rule 9(b) provides that, in alleging fraud, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this rule, a plaintiff must allege "the time, place, speaker, and sometimes even the content of the alleged misrepresentations."  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986); *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (observing that when a complaint includes a claim of fraud, "it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or

omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.") (citations omitted).

While Rule 9(b) allows general allegations regarding state of mind, such general allegations must be accompanied by descriptions of the "events which [plaintiff] assert[s] give rise to a strong inference" of the defendant's state of mind. *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 558 (2d Cir. 1979); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("[T]he relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.  Therefore… we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent.") (citations and internal quotation marks omitted).  A strong inference of fraud exists where plaintiff alleges (a) "facts to show that defendants had both motive and opportunity to commit fraud, or (b) [ ] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (citation and internal quotations omitted); *Gabrielle v. Law Office of Martha Croog*, No. 3:10cv1798(WWE), 2012 WL 460264, at *4 (D. Conn. Feb. 9, 2012) (citation omitted).

To state a common law fraud claim under Connecticut law, a plaintiff must allege facts in support of the following: "'(1) a false representation was made [by the defendant] as a statement of fact; (2) the statement was untrue and known to be so by [the defendant]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.'" *Stuart v. Freiberg*, 316

Conn. 809, 821 (2015) (quoting *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 628 (2006)) (alterations in original).

Ms. Montanez fails to specify in her Complaint what aspects of Fairfield Hyundai's conduct she believes constitutes fraud.  The Court's best guess is that she bases her fraud claim on the allegations that Fairfield Hyundai "represented" that it sold Ms. Montanez a Safe-Guard contract that covered her electronic components, that it represented that the car was a one-owner vehicle, and that it sold the car "knowing it had an aftermarket radio."  Compl. ¶¶7, 15-16, ECF No. 1.  Fraud could also be implicated by some of the alleged misrepresentations about the costs of the car and the services she allegedly was billed for but did not request.  *Id.* ¶¶26-31.  She alleges that all of the Defendants' acts were done "intentionally and/or in reckless disregard of the rights of the consumer plaintiff."  *Id.* ¶37.

The Court finds that Ms. Montanez has not pled sufficient specific facts to raise a "strong inference" that Fairfield Hyundai committed fraud.  *See Ross*, 607 F.2d at 558.  Ms. Montanez does not allege anywhere in the Complaint that Fairfield Hyundai had a motive to commit fraud.  She also generally fails to allege that it actually knew or had reason to know the statements it made to her about the car were false.  For example, Ms. Montanez alleges that Fairfield Hyundai represented that Safe-Guard's service contract would cover her electronic components, but she does not allege that they knew otherwise.  Allegations of knowledge or intent are required to state a fraud claim.  *See e.g.*, *Claude v. Wells Fargo Home Mortg.*, CIVIL ACTION NO. 3:13-cv-00535, 2014 U.S. Dist. LEXIS 112493, at 15-16 (D. Conn. Aug. 14, 2014) (granting a motion to dismiss a fraud claim because plaintiff failed to plead specific facts, rather than unsupported conclusions,

showing that raised a strong inference of fraud); *see also Datto Inc. v. Braband*, 856 F.
Supp. 2d 354, 380 (D. Conn. 2012) ("The mere fact that a party has breached a contract
does not create a strong inference of fraud.") (citation and internal quotation marks
omitted).  At this stage, virtually all of Ms. Montanez's allegations could be consistent
with mere negligence or incompetence, rather than fraud.  *See e.g.*, *Tatum v. Oberg*,
CIVIL ACTION NO. 3:08-CV-1251 (JCH), 2009 U.S. Dist. LEXIS 118347, at 10-11 (D.
Conn. Dec. 18, 2009) (deny a motion to amend the complaint with respect to a fraud
claim as futile under Rule 12(b)(6) because the allegations more plausibly supported a
"professional malpractice claim" as opposed to fraud).  Thus, they fail to state a claim for
fraud.

      The Court also finds that Ms. Montanez has failed to plead any aspects of her
fraud claims with sufficient particularity to survive Rule 9(b).  For example, Ms.
Montanez alleges that Fairfield Hyundai sold the car to her "on the representation that it
was a one-owner vehicle [and] [i]t was not."  Compl. ¶15, ECF No. 1.  But she fails to
allege when, how, or by whom that representation was made.  *See Luce*, 802 F.2d at 54
(affirming a grant of a motion to dismiss under Rule 9(b) where allegations of fraud were
conclusory and failed to indicate to which defendant they applied).  With respect to her
claim about the aftermarket radio, Ms. Montanez does not allege that a misrepresentation
was made at all, only that Fairfield Hyundai knew the car had such a radio.  *See Stuart*,
316 Conn. at 821 (noting a false statement as an essential element of a fraud claim).  She
also fails to allege when and how this representation was made to her, and who made it
and, thus, fails to satisfy Rule 9(b).

The Court cannot identify any factual scenario alleged in the Complaint that could plausibly support a fraud claim and that satisfies the requirements of Rule 9(b). Accordingly, Ms. Montanez's fraud claim is dismissed without prejudice.

## 2. Misrepresentation against Fairfield Hyundai

Fairfield Hyundai argues that Ms. Montanez has failed to state a claim for misrepresentation because she has not alleged that she relied on any statement it made. Fairfield Hyundai's Br. 20, ECF No. 18.  Ms. Montanez does not indicate in her Complaint what type of misrepresentation she alleges.  *See Citino v. Redevelopment Agency*, 51 Conn. App. 262, 273 (1998) (observing that negligent and innocent misrepresentation are causes of action in Connecticut) (citations omitted), *overruled on other grounds by Kaczynski v. Kaczynski*, 294 Conn. 121 (2009); *Centimark Corp. v. Vill. Manor Assocs. Ltd. P'ship*, 113 Conn. App. 509, 522 (2009) (recognizing fraudulent misrepresentation as a cause of action).  Nor does she allege with specificity the conduct that she believes supports a misrepresentation claim.  The Court assumes that her misrepresentation claim implicates the same conduct as her fraud claim.

The Court agrees that reliance is generally a necessary element of any type of misrepresentation claim.  *See Olsen v. Weiss*, No. 536688, 1998 WL 420780, at *2 (Conn. Super. Ct. July 20, 1998) ("[an] essential element of misrepresentation, whether fraudulent, negligent or innocent is that the plaintiff *justifiably* rely on the representation in question.") (alteration and emphasis in original) (citing *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575 (1995); *Matyas v. Minck*, 37 Conn. App. 321, 323 (1995)); *see also e.g.*, *Stuart*, 316 Conn. at 821-22 (enumerating reliance as one of the required elements of negligent misrepresentation).  It also agrees that Ms. Montanez

could have specified more clearly that she relied on the various misrepresentations she relied on in purchasing the car.

To the extent that Ms. Montanez asserts a claim of negligent misrepresentation, the Court finds that she has alleged one adequately.  To state a claim for negligent misrepresentation, a plaintiff must allege facts in support of the following:  "'(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result.'"  *Stuart*, 316 Conn. at 821-22 (2015) (quoting *Nazami*, 280 Conn. at 626).

Here, Ms. Montanez alleges that Fairfield Hyundai told her that her car was a "one-owner vehicle" when it was not and provided her with certain pricing information that was incorrect.  These allegations satisfy the first three elements, because they indicate plausibly that Fairfield Hyundai knew or should have known the nature of the car it sold, and that Ms. Montanez was reasonable to rely on these representations about the car.  Ms. Montanez also claimed that she suffered monetary harm, in that she was required to pay for repairs on her car that she believes should have been covered under the factory warranty or the Safe-Guard contract.  Although the causal link between Fairfield Hyundai's misrepresentations and this pecuniary harm is quite weak, at this stage, the Court cannot find that her claim is entirely implausible.

To the extent that Ms. Montanez makes an intentional or fraudulent misrepresentation claim, as explained above in analyzing her fraud claim, she has failed to meet the standard of Rule 9(b) by specifying the time, place, and speaker of any alleged misrepresentation.  Fed. R. Civ. P. 9(b); *see e.g.*, *James F. Canning Agency v.*

23

*Nationwide Ins. Co. of Am.*, No. 3:09 CV 1413 (MRK), 2010 WL 2698292, at *2-3 (D. Conn. Mar. 10, 2010) (observing that a claim of intentional misrepresentation must satisfy Rule 9(b) and finding the complaint fell short of this standard because the allegations were too conclusory to generate a "strong inference of fraud"). Thus, any intentional misrepresentation claim is dismissed without prejudice. Ms. Montanez's negligent misrepresentation claim against Fairfield Hyundai may proceed at this time.

### 3. Breach of Contract and the Covenant of Good Faith and Fair Dealing against Fairfield Hyundai

Fairfield Hyundai argues that Ms. Montanez has failed to state a claim of breach of contract because she does not identify with particularity the provision of the contract she believes Fairfield Hyundai violated. Fairfield Hyundai's Br. 16, ECF No. 18. It argues that her allegations that Fairfield Hyundai was obligated to repair her car under the contract are too vague. *Id.* at 16-17. The Court agrees.

To state a claim for breach of contract, a plaintiff must plead facts supporting the following elements: "(1) formation of an agreement, (2) performance by one party, (3) breach of the agreement by the opposing party, and (4) damages." *Young v. Citimortgage, Inc.*, No. 3:11-cv-01363-WWE, 2012 WL 4371532, at *2 (D. Conn. Sept. 24, 2012) (citing *McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503 (2006)). Ms. Montanez's Complaint does not indicate what contract she claims to have entered with Fairfield Hyundai that was breached. Thus, she fails to allege facts in support of the first and third elements.

Ms. Montanez alleges that the car she bought was covered by a "factory warranty" but does not provide any more information about the parties to this agreement or its nature. Compl. ¶13, ECF No. 1. She also alleges that she entered into a sales

contract with Fairfield Hyundai but does not clarify what, if any, of its provisions she

claims Fairfield Hyundai violated.  *Id.* ¶6.  She argues that the "Defendants breached

their contract by not complying with applicable statutes," but does not explain why she

believes this assertion to be true.  *Id.* ¶36 (citing, among others, *Farmers' & Merchants'*

*Bank v. Fed. Reserve Bank*, 262 U.S. 649, 660 (1922); *Harlach v. Metro. Prop. &*

*Liability Ins. Co.*, 221 Conn. 185, 192 (1992)).  Nor does Ms. Montanez address or

clarify this claim further in her opposition briefs.  Without more information, the Court

cannot determine whether Fairfield Hyundai was party to a contract that it breached.

Accordingly, the breach of contract claim against Fairfield Hyundai is dismissed without

prejudice.

Ms. Montanez also alleges that Fairfield Hyundai breached the implied covenant

of good faith and fair dealing.  The vast majority of contracts include an implied covenant

of good faith and fair dealing, which operates as a rule of interpretation.  *Magnan v.*

*Anaconda Indus., Inc.,* 193 Conn. 558, 566 (1984) (noting that the Restatement (Second)

of Contracts recognizes this covenant in every contract) (citing Restatement (Second) of

Contracts § 205 (1979)); *Gupta v. New Britain General Hosp.,* 239 Conn. 574, 598

(1996) ("Every contract carries an implied covenant of good faith and fair dealing

requiring that neither party do anything that will injure the right of the other to receive the

benefits of the agreement.") (citation and internal quotation marks omitted); *De La*

*Concha of Harford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004) ("The

covenant of good faith and fair dealing presupposes that the terms and purpose of the

contract are agreed upon by the parties and that what is in dispute is a party's

discretionary application or interpretation of a contract term.") (citation and internal quotation marks omitted).

To state a claim for breach of the covenant of good faith and fair dealing, Ms. Montanez must allege that Fairfield Hyundai acted in bad faith by impeding her right to receive benefits that she reasonably expected under the contract. *Colon v. Commonwealth Annuity & Life Ins. Co.*, No. 3:08-CV-00079 (PCD), 2008 WL 2185923, at *2 (D. Conn. May 22, 2008) (citing *De La Concha of Hartford, Inc.*, 269 Conn. at 433); *see also Magnan,* 193 Conn. at 567 (describing the covenant as a "rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended."); *Landry v. Spitz*, 102 Conn. App. 34, 43 (2007) ("'a party who evades the spirit of the contract… may be liable for breach of the implied covenant of good faith and fair dealing'") (quoting 23 Williston, *Contracts* §63.22, p. 508 (4th ed. 2002)).

As noted above, Ms. Montanez fails to allege clearly that Fairfield Hyundai is a party to the factory warranty.  She does allege that it is a party to the Retail Installment Contract, but provides no information about the terms of that contract, much less allegations indicating that Fairfield Hyundai acted in bad faith to deprive of her bargained for benefits.  Without more, Ms. Montanez's claim for breach of the covenant of good faith and fair dealing must be dismissed without prejudice.

### 4.   CUTPA against Fairfield Hyundai

Fairfield Hyundai argues that Ms. Montanez has failed to state a CUTPA claim because she fails to plead the claim with sufficient particularity.  Fairfield Hyundai's Br. 13-14, ECF No. 18.  It also argues her claim fails because she has not alleged a

sufficiently "aggravating" circumstance to sustain CUTPA liability for a breach of contract. *Id.* at 15-16.  In her opposition brief to Fairfield Hyundai's motion, Ms. Montanez only mentions her CUTPA claim once and does not address the claim substantively.  Pl.'s Opp. Br. 6, ECF No. 31.  The Court finds that Ms. Montanez has succeeded in stating a CUTPA claim.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. §42-110b(a).  To state a CUTPA claim, Ms. Montanez must allege facts that in support of the following: (1) that she suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce.  *See id.* §§42-110b(a), 42-110g(a).

For an act to be unfair, Connecticut courts look at "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy… in other words, is it within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers…" *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 227 (2010) (citation and internal quotation marks omitted).  A practice need not meet all three criteria to constitute an unfair trade practice, but rather may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."  *Id.* at 228 (citation and internal quotation marks omitted).

For an act or practice to be deceptive (1) "there must be a representation, omission or other practice likely to mislead consumers," (2) "consumers must interpret

the message reasonably under the circumstances," and (3) "the misleading representation, omission, or practice must be material – that is, likely to affect consumer decisions or conduct."  *Bank of New York v. Nat'l Funding*, No. X01CV000171525S, 2005 WL 527749, at *5 (Conn. Super. Ct. Jan. 21, 2005) (citing *Southington Savings Bank v. Rodgers*, 40 Conn. App. 23, 28 (1995)); *see also Caldor, Inc. v. Heslin,* 215 Conn. 590, 597 (1990) (citation omitted).  Deceptive acts under CUTPA include a broader range of conduct that common law claims for fraud or misrepresentation. *Wilkins v. Yale Univ.*, No. CV106014646S, 2011 WL 1087144, at *4 (Conn. Super. Ct. Feb. 25, 2011) (citing *Muniz v. Kravis*, 59 Conn. App. 704, 713 (2000)).

Ms. Montanez does not indicate which aspects of Fairfield Hyundai's alleged conduct she believes constitute an unfair or deceptive trade practice.  The Court surmises that she believes the unfair or deceptive practice includes her allegations that Fairfield Hyundai misrepresented the price of her purchase and the nature of the services she received.  She claims that those acts were done "as a matter of routine practice and procedure."  Compl. Compl. ¶37, ECF No. 1.

At this stage, Ms. Montanez has alleged sufficient facts on her CUTPA claim under either the deception or unfairness standard.  A claim of negligent misrepresentation can support a CUTPA claim.  *See e.g.*, *Abrams v. Riding High Dude Ranch,* No. CV970345046S, 1998 WL 59569, at *2 (Conn. Super. Ct. Feb. 5, 1998) ("Negligent conduct supporting CUTPA claims usually involves negligent misrepresentation.") (internal quotation marks omitted) (citing *Prishwalko v. Bob Thomas Ford, Inc.*, 33 Conn. App. 575 (1994)); *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *6 (D. Conn. Nov. 24, 2015) ("'Negligent misrepresentation

suffices… as an aggravating factor making a breach of contract action also the basis of a CUTPA claim.'") (quoting *Romulan Realty, LLC v. Old Lyme Prods., Inc.*, No. CV115014161S, 2011 WL 6934754, at *2 (Conn. Super. Ct. Dec. 7, 2011))).

Ms. Montanez need not plead such a claim with particularity under Rule 9(b). *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) (allowing an aspect of a CUTPA claim to proceed without satisfying 9(b), because the conduct at issue was something less than fraud, but still implicated CUTPA); *see also Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 158 (1994) (noting that a plaintiff need not prove fraud to show entitlement to relief under CUTPA). Nor need she allege that Fairfield Hyundai knew that any of its representations about the car were false. *See e.g.*, *Web. Press Servs. Corp. v. New London Motors, Inc.*, 203 Conn. 342, 363 (1987) (observing that CUTPA claimant need not prove defendant's knowledge that representation was false). Accordingly, Fairfield Hyundai's Motion to Dismiss the CUTPA claim is denied.

### 5. Breach of Warranty against Fairfield Hyundai

To state a claim for breach of warranty, a plaintiff must plead "(1) existence of the warranty; (2) breach of the warranty; and[ ](3) damages proximately caused by the breach." *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 114 (D. Conn. 2014) (citations omitted). An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods" or "any description of the goods" that becomes "part of the basis of the bargain." Conn. Gen. Stat. §42a-2-313. Here, Ms. Montanez claims that Fairfield Hyundai breached an express warranty by making a promise about the nature of the car, that it was a one-owner car, that was untrue. Compl.

¶18, ECF No. 1. While the Complaint's allegations about how this alleged breach of warranty caused Ms. Montanez harm are sparse, at this time, the Court will allow the claim to go forward.

### 6.   Motion for More Definite Statement

On the claims which remain in the case, Fairfield Hyundai asks the Court to order Ms. Montanez to file a more definite statement of her claims under Federal Rule of Civil Procedure 12(e).  Fairfield Hyundai's Br. 21-24, ECF No. 18.  These motions are "generally disfavored" and "are not intended to substitute for the 'normal discovery process.'"  *Vaden v. Lantz*, 459 F. Supp. 2d 149, 151 (D. Conn. 2006).  Because this case has proceeded through discovery, this motion is **DENIED** without prejudice.

### D.   Remaining Claims against Safe-Guard

As noted above, Ms. Montanez only asserts two claims against Safe-Guard.  The MMWA claim has already been dismissed, thus the only remaining claim is the breach of contract claim.  In addition, Ms. Montanez seeks judgment on the pleadings in her favor on the basis of an alleged settlement agreement between Safe-Guard and herself.  For the reasons that follow, Ms. Montanez's Motion for Judgment on the Pleadings, ECF No. 15, and Safe-Guard's Motion to Dismiss, ECF No. 13, the breach of contract claim are both **DENIED**.

### 1.   Motion for Judgment on the Pleadings as to Safe-Guard

Ms. Montanez contends that she is entitled to judgment in her favor on all claims against Safe-Guard, because Safe-Guard agreed to settle the matter with her for $3,700 on April 1, 2015.  Mot. for J., ECF No. 15.  However, in finalizing this agreement, she contends that Safe-Guard has proposed "oppressive or unacceptable terms" in the release.

Pl.'s Br. 1, ECF No. 15-2.  She asks the Court to enforce the settlement reached by the parties, despite the fact that it has not been reduced to a formal, written agreement.  *Id.* at 1-2.  Safe-Guard objects because, it argues, the parties never reached a "meeting of the minds on the full terms of an agreement."  Safe-Guard's Opp. Br. 1, ECF No. 21.  The Courts agrees and declines to enforce the settlement agreement.

While the parties do not directly address whether Connecticut law or federal common law applies, the Court need not decide because the result is the same under both standards.  *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997); *see also Figueroa v. New York City Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012) ("[W]e note that the question of whether federal or state law controls the enforceability of a settlement agreement in this context is an open one.").

Under Connecticut law, settlement agreements are generally not enforceable where there has been no final meeting of the minds or where terms of the agreement remain disputed.  *See Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811-12 (1993) (holding that trial court can enforce settlement agreement when the terms of the agreement are "clear and unambiguous" and parties do not dispute them); *Omega Eng'g, Inc. v. Omega S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) (noting that under Connecticut law, "a contract is binding if the parties mutually assent to its terms.") (citing *Ubysz v. DiPietro*, 185 Conn. 47, 41 (1981)); *Amica Mut. Ins. Co. v. Welch Enterprises, Inc.*, 114 Conn. App. 290, 295 (2009) ("Only when the terms are clear and unambiguous can the court enforce the settlement agreement… [B]ecause nothing in the record indicates that the plaintiff ever agreed to get a release… there was no meeting of the minds, and, therefore, the agreement was not enforceable.") (citation omitted); *see*

*also e.g.*, *Koenig v. Middlebury Land Assocs., LLC*, No. CV085009081S, 2008 WL 5219035, at *2 (Conn. Super. Ct. Nov. 19, 2008) (noting that "if there is a meeting of the minds the [settlement] agreement is enforceable" and refusing to enforce a settlement agreement where there was no meeting of the minds).

Here, the parties never agreed upon all of the final terms of the settlement agreement.  Accordingly, there was no meeting of the minds and no settlement agreement for the Court to enforce under Connecticut law.

Under federal common law, the Second Circuit has indicated that the Court should consider four factors in determining whether parties should be bound by a settlement agreement absent a written document signed by all parties.  *Ciaramella*, 131 F.3d at 323.  The Court must consider "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  *Id.*  No single factor is dispositive.  *Id.*

In this case, three of the four factors favor not enforcing the settlement agreement. Although Safe-Guard does not appear to have expressly reserved the right not to be bound in the absence of a signed agreement, for the reasons stated above, the Court finds that the parties have not agreed finally upon all of the terms of the settlement.  Nor has the agreement, such as it is, been performed in any way.  The Court also believes this is usually the type of agreement committed to writing.  *See id.* at 326 ("Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written . . . .") (citation and internal quotation

marks omitted).  Because three of the four *Ciaramella* factors do not favor enforcement, the Court declines to enforce the agreement under federal common law.

Accordingly, Ms. Montanez's Motion for Judgment on the Pleadings is denied.

### 2.   Breach of Contract against Safe-Guard

As noted above, to state a claim for breach of contract, a plaintiff must plead facts supporting the following elements: "(1) formation of an agreement, (2) performance by one party, (3) breach of the agreement by the opposing party, and (4) damages." *Young v. Citimortgage, Inc.*, No. 3:11-cv-01363-WWE, 2012 WL 4371532, at *2 (D. Conn. Sept. 24, 2012) (citing *McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503 (2006)).  The Court finds that Ms. Montanez has stated a plausible breach of contract claim against Safe-Guard.  She has alleged that she purchased a service contract from Safe-Guard that she believed covered electronic components, that such a component malfunctioned, and that Safe-Guard failed to pay for the necessary repairs. Accordingly Safe-Guard's Motion to Dismiss this claim is **DENIED**.

### III.   Ms. Montanez's Motion to Amend her Complaint (ECF No. 33)/ Safe-Guard's Motion for Sanctions (ECF No. 38)

Ms. Montanez seeks to amend her Complaint to add as a party an alleged successor in interest to the owner of Fairfield Hyundai, Fairfield Hy, Inc.  Mot. to Amend, ECF No. 33.  She also seeks to add certain factual allegations and an additional legal claim.  *Id.*  She has filed this motion before the deadline for amending the Complaint or adding parties had expired.  *See* 26(f) Report at 3, ECF No. 26 (plaintiff may move to add parties by July 15, 2015 and amend the Complaint by August 30, 2015); Scheduling Order, ECF No. 29 (adopting the parties' 26(f) Report).

Neither Defendant opposes adding Fairfield Hy, Inc. as a party.  Rule 20(a)
provides that defendants may be joined in the same case if "any right to relief is asserted
against them jointly, severally, or… with respect to or arising out of the same
transaction… and [ ] any question of law or fact common to all defendants will arise in
the action."  Fed. R. Civ. P. 20(a)(2)(A)-(B).  If Ms. Montanez satisfies this rule's
requirements, the determination of whether to permit her to add a defendant lies within
this Court's discretion.  *See c.f. Deluca v. Atl. Refining Co.*, 176 F.2d 421, 424 (2d Cir.
1949) (holding that a district court did not abuse its discretion in refusing to join a party,
even if Rule 20(a) was satisfied).

The Court is satisfied that Ms. Montanez has met the requirements of Rule 20(a).
*See e.g.*, *Lai v. Eastpoint Int'l, Inc.*, No. 99 Civ.2095(DLC), 1999 WL 688466, at *3
(S.D.N.Y. Sept. 1, 1999) (granting a motion to join a successor in interest "alleged to be
liable for the same [conduct] alleged in the First [ ] Complaint" under Rule 20(a))
Because no party objects or otherwise indicates that adding Fairfield Hy, Inc. as a
Defendant in this case is inappropriate, Ms. Montanez's Motion to Amend is **GRANTED
IN PART**, and she is permitted to add Fairfield Hy, Inc. as a party.

The other key changes Ms. Montanez seeks to make are to add two factual
allegations: (1) that both Defendants "claim" that the Safe-Guard service contract should
not have been sold to Ms. Montanez because her Mini Cooper contained an aftermarket
radio, and (2) that Safe-Guard refused to refund the cost of the service contract it sold to
her.  Proposed Am. Compl. ¶¶27-28, ECF No. 33.  Based on these new factual
allegations, Ms. Montanez also asks to add a claim she calls "willful conversion" for the

cost of the service contract under Conn. Gen. Stat. §52-564.  Proposed Am. Compl. ¶1, ECF No. 33.

Safe-Guard argues that Ms. Montanez lacks a good faith basis to believe that Safe-Guard claims that that its service contract should not have been sold to her.[5]  Safe-Guard's Opp. Br. 1-3, ECF No. 35.  Safe-Guard also argues that even if this factual addition is permitted, Ms. Montanez's so-called willful conversion claim is "unviable" because "[t]he fact that an insurance policy might exclude a particular loss… does not render it illusory or [ ]nugatory." *Id.* at 3.

In addition, Safe-Guard has filed a Motion for Sanctions.  In its motion, it challenges (1) the attempted addition of the allegation about whether the Safe-Guard contract should have been sold to Ms. Montanez and (2) an allegation, present in the initial Complaint, that Ms. Montanez was never provided with the first page of the Safe-Guard contract at any time.  Mot. for Sanctions, ECF No. 38; Compl. ¶12, ECF No. 1; Proposed Am. Compl. ¶27, ECF No. 33.  It argues that Ms. Montanez has no reasonable basis to persist in making either of these claims and asks that she withdraw them and that it be awarded various costs.  Mot. for Sanctions Br. 1, 11, ECF No. 39.

For the reasons that follow, the Motion for Sanctions, ECF No. 38, is **DENIED** and Ms. Montanez's Motion to Amend her Complaint in order to add certain factual allegations and the "willful conversion" claim is **GRANTED IN PART** and **DENIED IN PART**.  The Court does not grant Ms. Montanez leave to add the proposed addition at paragraph 27 of her Proposed Amended Complaint and her statutory theft claim.  She is

---

[5] Safe-Guard also argues that allowing Ms. Montanez to amend her complaint would be futile because the Court lacks subject matter jurisdiction over her claims.  Safe-Guard's Opp. Br. 1, ECF No. 35.  However, as described in more detail earlier in this opinion, the Court has determined that it does have subject matter jurisdiction.  Thus, this argument is now moot.

permitted to add Fairfield Hy, Inc. as a Defendant and the remaining proposed factual allegations in her Proposed Amended Complaint.

### A. Standard

Rule 15 provides that "[t]he court should freely" grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In considering whether to grant a litigant leave to amend, the Court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice, and futility of amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").  A proposed amendment is futile if it fails to state a claim that would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Lucente v. Int'l. Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Rule 11(b) provides that by filing pleadings with the Court, an attorney

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… the claims… and other legal contentions are warranted by existing law… [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(2)-(3).  A party may file a motion for sanctions based on a failure to comply with these provisions, but only after that party has provided notice of that motion to the targeted party.  *See* Fed. R. Civ. P. 11(c)(2) ("The motion… must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service . . . ."); *Fierro v. Gallucci*, 423 F. App'x 17, 18-19 (2d Cir.

2011) (holding that the district court was "required to deny plaintiffs' motion for sanctions for failure to comply with the 21-day 'safe harbor,' which requires Rule 11 motions to be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims.") (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995)).

To satisfy this notice requirement, the filing party must inform the motion's target, prior to filing a motion for sanctions with the Court, of "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered…" *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citation and internal quotation marks omitted).  "An informal warning in the form a letter without service of a separate Rule 11 motion is not sufficient" to satisfy this safe-harbor provision.  *Id.*

On July 20, 2015, Safe-Guard sent a letter to Ms. Montanez's counsel to ask that the two allegations to which it objects be withdrawn.  Mot. for Sanctions Br. 5-6, 9, ECF No. 39; Safe-Guard's Ex. B, Letter dated July 20, 2015, ECF No. 39-2.  This letter contains a detailed summary of why Safe-Guard believes the allegations are improper. Safe-Guard indicates that Ms. Montanez's counsel never responded to its letter, and that it filed its Motion for Sanctions on August 26, 2015.  Mot. for Sanctions Br. 5-6, 9, ECF No. 39.

While Safe-Guard's July 20 letter is "informal," it sets forth in detail the factual and legal bases for a motion for sanctions and unequivocally indicates that Safe-Guard planned to file a motion for sanctions if the disputed allegations were not withdrawn. Safe-Guard's Ex. B, Letter dated July 20, 2015, ECF No. 39-2.  The Court finds that this

detailed letter complied with Rule 11's safe harbor provision. *See Star Mark Mgmt., Inc.*, 682 F.3d at 176-77 (holding that serving a notice of motion which included six reasons why Rule 11 sanctions would be appropriate, without a memorandum of law or supporting affidavits, satisfied Rule 11's safe harbor provision). Accordingly, the Court may proceed to examine the merits of Safe-Guard's Rule 11 motion.

An attorney may be sanctioned under Rule 11 for presenting frivolous legal or factual claims to the Court that are objectively unreasonable. *See* Fed. R. Civ. P. 11(b)(2)-(3); *Star Mark Mgmt., Inc.*, 682 F.3d at 177. To grant a motion for sanctions, the Court must conclude that it is "patently clear that a claim has absolutely no chance of success" or that the factual claims are "utterly lacking in support." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995) (citation and internal quotation marks omitted); *Storey v. Cello Hldgs., L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (citation and internal quotation marks). "All doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distribs., Inc.*, 61 F.3d at 131.

"Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005). Thus, mere inadvertence or advocacy that includes some level of overstatement does not fall within the ambit of Rule 11. *See Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). Indeed, "[c]ourts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (citing *Pannonia Farms, Inc.*, 426 F.3d at 652).

**B. Allegation that Safe-Guard Contract Should Not Have Been Sold to Ms. Montanez**

Ms. Montanez seeks to add an allegation that both Defendants in this case are now claiming that she should never have been sold the Safe-Guard contract. Proposed Am. Compl. ¶27, ECF No. 33. Safe-Guard contends that it has never taken this position. Mot for Sanctions Br. 4, ECF No. 39. It argues that this allegation has misconstrued arguments it made about the scope of the Safe-Guard service contract, which excluded any damage caused by "alteration" to the vehicle not authorized by the manufacturer. *Id.* at 5.

The Court agrees with Safe-Guard, to some extent, that the allegation is not well-supported by Safe-Guard's brief. Safe-Guard takes the position that the contract it sold Ms. Montanez did not cover the problem she experienced with her radio, not that it should not have been sold to her at all. Safe-Guard's Br. 6-7, ECF No. 14. Because it does not serve the interests of justice to amend a complaint to add an allegation that is untrue and too conclusory to be entitled to a presumption of truth, Ms. Montanez's Motion to Amend to add this allegation is denied. *See Savitsky v. Mazzella*, 210 F. App'x 71, 72 (2d Cir. 2006) (affirming a district court's denial of a motion to amend because the proposed allegations were "either conclusory or contradictory"); *see also e.g.*, *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 504-05 (S.D.N.Y. 2007) (holding that the interests of justice would not be served by allowing an amendment to the complaint that the implicated fact witness testified was untrue).

But the Court does not agree that Ms. Montanez's counsel has acted in an objectively unreasonable manner or that counsel's conduct is otherwise sanctionable under Rule 11. It is understandable why counsel might conclude that a contract that did

not provide Ms. Montanez with the coverage she wanted should not have been sold to her.  While this conclusion requires an additional inferential leap and does not constitute Safe-Guard's position, it does not "utterly" lack support.  *Storey*, 347 F.3d at 388 ("With regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'") (citation omitted); *see also e.g.*, *E. Gluck Corp.*, 252 F.R.D. at 181 (finding sanctions inappropriate where movant's arguments went to the merits of the dispute or were properly resolved in discovery).  Thus, Safe-Guard's Motion for Sanctions is denied with respect to this factual claim.

### C.  Addition of "Willful Conversion" Claim

Ms. Montanez seeks to add a claim she calls "willful conversion."  Proposed Am. Compl. ¶1, ECF No. 33.  In making this claim, she cites Conn. Gen. Stat. §52-564, which describes a cause of action called "statutory theft" that provides treble damages to the victims of a knowing theft.  Conn. Gen. Stat. §52-564 ("Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages.").  Conversion and statutory theft are distinct causes of action. *See Rana v. Terdjian*, 136 Conn. App. 99, 114 (2012) (citations omitted).  Because she has cited to the statutory theft statute, the Court believes that Ms. Montanez seeks to assert a statutory theft claim and construes her Complaint accordingly.

Statutory theft is the equivalent of larceny, and a plaintiff must prove the same elements to be entitled to treble damages.  *Id.* at 113-14; *Sullivan v. Delisa*, 101 Conn. App. 605, 619-20 (2007) (citing *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 770-71 (2006)).  To state a claim for statutory theft, Ms. Montanez must allege facts supporting the following: "(1) the property belonged to the plaintiff, (2) the defendant

intentionally deprived the plaintiff of [her] property, and (3) the defendant's conduct was unauthorized." *Delta Capital Grp., LLC v. Smith*, No. CV 970571407S, 1998 WL 167293, at *4 (Conn. Super. Ct. Mar. 31, 1998) (citing *Discover Leasing, Inc. v. Murphy*, 33 Conn. App. 303, 309 (1993)).  Ms. Montanez must also plead that the Defendants acted wrongfully.  *See Sullivan*, 101 Conn. App. at 620.

The Court finds that allowing Ms. Montanez to add this claim would be futile because her proposed Amended Complaint fails to state a claim for statutory theft under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  Ms. Montanez's Complaint lacks allegations that the Defendants acted wrongfully and intentionally in depriving her of money she spent on the service contract.  The best support for this claim is her proposed allegation that Safe-Guard concedes that Fairfield Hyundai should not have sold its service contract to her, but this allegation is too conclusory to support the claim properly.

Moreover, with respect to Safe-Guard at least, it appears that Ms. Montanez seeks to allege a breach of contract claim and, therefore, cannot allege a claim of statutory theft. *See Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 421 (2007) ("When an action arises from a claim under an express or implied contract, a claim in tort is inappropriate."); *see also e.g.*, *Hayn v. Sousa*, No., KNLCV126014880S, 2013 WL 4056309, at *4 (Conn. Super. Ct. July 24, 2013) (dismissing statutory theft claim where facts alleged provided basis of suit in contract, thereby making an action in tort inappropriate).  Accordingly, Ms. Montanez's request to add a claim of statutory theft is denied.

### D.  Allegation that Ms. Montanez Never Received Page One of Safe-Guard Contract

In her initial Complaint, Ms. Montanez claims that she never received the first page of the Safe-Guard contract at any time.  Compl. ¶12, ECF No.1.  Safe-Guard indicates that Fairfield Hyundai produced a signed copy of the first page of the contract in discovery.  Mot. for Sanctions Br. 7-8, ECF No. 39.  Because of this document, it asked Ms. Montanez to withdraw her allegation that she had never received the first page of the Safe-Guard contract.  Safe-Guard's Ex. B, Letter dated July 20, 2015, ECF No. 39-2.  When she failed to do so, Safe-Guard filed its Motion for Sanctions.

Essentially, Safe-Guard argues that because evidence obtained in discovery raises a strong inference that one of the factual allegations in Ms. Montanez's Complaint is untrue, her lawyer has a duty to accept this evidence and amend the Complaint accordingly.  The Court disagrees.  Rule 11 does not require this result.  While the fact that Ms. Montanez signed the first page raises a strong inference that she received that page, it does not render Ms. Montanez's Complaint a sanctionable misrepresentation.  *See Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir. 1988) (reversing a district court's grant of Rule 11 sanctions because "[w]hile it is true that certain facts revealed during discovery weakened [the defendant's] position, those facts did not require [its counsel] to withdraw the counterclaims… [Defendant] acknowledged the facts and argued its position as zealously as possible."); *Kiobel*, 592 F.3d at 82 (reversing a Magistrate Judge's imposition of Rule 11 sanctions because the party being sanctioned "need not prove the truth of their accusation, only that it was not 'utterly lacking in support.'") (quoting *Storey*, 347 F.3d at 388).

Instead, the question of whether Ms. Montanez received the first page of Safe-Guard's contract should be determined on summary judgment or, if necessary, at trial. *See Agcy Dev., Inc. v. Med Am. Ins. Co.*, 310 F. Supp. 2d 538, 549 (W.D.N.Y. 2004) (holding that despite its grant of summary judgment in favor of the defendant, the plaintiff's complaint was not "so deficient" and its legal arguments not so "egregious" as to require sanctions).

**IV.     Conclusion**

For all of the foregoing reasons, Safe-Guard's Motion to Dismiss, ECF No. 13, is

**GRANTED IN PART** and **DENIED IN PART**; Ms. Montanez's Motion for Judgment

on the Pleadings, ECF No. 15, is **DENIED**; Fairfield Hyundai's Motion to Dismiss, ECF

No. 17, is **GRANTED IN PART** and **DENIED IN PART**; Safe-Guard's Motion for

Sanctions, ECF No. 38, is **DENIED**; and Ms. Montanez's Motion to Amend the

Complaint, ECF No. 33, is **GRANTED IN PART** and **DENIED IN PART**.

As a result of these various rulings, the claims against Fairfield Hyundai for fraud,

intentional or fraudulent misrepresentation, breach of contract, and breach of the implied

covenant of good faith and fair dealing are dismissed.  Ms. Montanez's claims for

violations of TILA and CUTPA, as well as breach of warranty and negligent

misrepresentation will proceed against Fairfield Hyundai at this time.  Her claims against

both Fairfield Hyundai and Safe-Guard for a violation of the MMWA are dismissed.  Her

breach of contract claim against Safe-Guard will proceed at this time.

**Ms. Montanez is directed to file an Amended Complaint, consistent with this**

**Order, within thirty (30) days.**

**SO ORDERED** this 29th day of March 2016, at Bridgeport, Connecticut.

 /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge